We'll hear argument first this morning in Case 12-8561, Paroline v. United States. Mr. Schneider. Mr. Chief Justice, may it please the Court. This is a case about statutory construction. Specifically, under 18 U.S.C. 2259, must a victim's losses be approximately caused by a defendant's offense conduct before a sentencing judge can award restitution? The short answer to the question is all losses must be approximately caused. Eleven courts of appeals and the government agree that this Circuit ignored the plain text of the statute and the enumerated enforcement provisions of 3664 to craft a restitution scheme where the possession of two images of child pornography resulted in the award of $3.4 million to Doyle Paroline, which was jointly and severally liable. In my time before the Court, I wish to address, first, why the Fifth Circuit decision is incorrect, and, second, why the government's concept of aggregated causation conflicts with its statutory burden of proof contained in 3664E. Alito, before you do that, could you explain why there is an issue of proximate causation here? Why isn't there clearly proximate cause? Why is it – why does it matter? Well, I think there has to be – in all restitution cases, the issue is whether or not the person's conduct caused the harm and losses, and harm and losses are two different things. Yeah. Well, why isn't the issue here a question of factual causation? What loss is proximately caused by the possession of child pornography? That's a fact-intensive question, and that's what the district court has to determine. Whether on the facts presented, there are identifiable losses that were caused by the defendant's conduct, and there can be. Sotomayor, it seems you're confusing proximate cause with cause in fact. There are two legal requirements, but not the same. Proximate cause is foreseeability. There is no argument, I think, that anyone who possesses child pornography knows that the individual depicted is going to feel invaded by that viewing. So there's no issue that the person is hurt. The question is a different one, which is the cause in fact. I think that's what my colleague Sam Alito was talking about. So why do you continue to talk about proximate cause when it's a different concept that's at issue? Is her treatment – I think you're arguing that her treatment has to be a but-fork dispossession. I think they go hand in hand, because when dealing with proximate cause, would the conduct is the losses, the natural sequence from the conduct and the result. And what we're dealing with is would the losses have occurred, but for the conduct. And in this situation, in this case where the damage model was created 6 months before the notice is received, then you don't have the relationship between the loss and the conduct or the notice of the conduct. And it's a real problem. But the important consideration in the interpretation of the statute is the government's burden of proof under 3664E. Why would we agree that the losses here were the proximate result, at least, of the aggregate actions of all the offenders? Would you go that far?  Kennedy Would you agree that it is the proximate result of the aggregate actions of all the offenders? Lefkowitz It would be a harm, but not a harm. Kennedy Are they a proximate harm, all right? Lefkowitz But the problem is when you're dealing with aggregate causation, that conflicts with the statutory burden of proof that the government has under 3664E, which is made applicable to the 2259 under Section B-2. And you'll find 3664E at Appendix 22 to our merits brief. The Justice Ginsburg Why should we get to that question when we have, it seems to be, a clear order from Congress, and it is in 2259A. It says, the Court shall order restitution for any offense under this chapter. Sounds like that's the direction, that if there's an offense under this chapter, which is undisputed, there is, the Court shall order restitution. Lefkowitz Only if the losses are the result of the offense, because the government's by preponderance of the evidence, that the losses sustained by the victim are the result of the offense. Kennedy My question is, why isn't it part of the, you were going to point to the statute. Why isn't it at least the result of the aggregate number of, aggregate offenders? Lefkowitz It's not in the indictment. Only one person is charged, and Kennedy But he is a, he is one of the offenders in the aggregate. Lefkowitz He's not, it's not in the indictment. No one else is in front of the sentencing judge. The statute set 3664E and section FB3F all talk about the offense, and the offense is normally, this Court has recognized that when you talk about the offense, it's the offense of conviction. Kagan Mr. Schneider, on your view, if only one person viewed the pornography, that person would be responsible for the entire damages. But if a thousand people viewed the pornography and the harm was that much greater, nobody would be on the hook for restitution. How could that possibly make sense? Schneider Just, Kagan, that's not what, there are numerous cases where someone who looks at, possesses child pornography has been shown to be liable for losses and restitution. In some individual cases, it's not. And there's fewer cases than not are getting no restitution because there's no losses. The losses in, it all depends on the facts.  In this case, like on any, unlike any other case, there are competing experts that the judge, district judge, played a, acted as a gatekeeper of the forensic science, and with the challenge to the methodology that was presented by Amy's experts, the judge left no alternative because there was no explanation. And that methodology, faulty methodology, was part of his decision that he recognized. Breyer What's the answer, though, to the problem? Forgetting this case. There's a problem in child pornography cases. Congress clearly wants restitution. Makes sense to me. But if a thousand people look at it, then each one can say, but I didn't cause more than a tiny fraction at most. And so there virtually is no restitution. Right? Now, every one of the thousand says that, truthfully, and so therefore, the victim gets no restitution, opposite of what Congress wanted. But their answer in the lower court was, we'll make each one of those thousand liable for the whole thing. The government's answer is aggregate cause. It's called a concept that they've sort of created, but it's there to answer the problem. What's your answer to the problem? It's a very difficult question. And the answer is multifaceted, because the government's burden of proof for restitution applies to all restitution statutes. It's the same standard. And you can't carve out one standard of causation for one crime because it's a heinous crime. And as repugnant as child pornography is, the standard of causation has to be the same. Breyer. I suppose that it does. If you have the same problem, you have the same problem. Where there – you understand. So how do we answer this problem? And the difficulty of saying dividing – the government doesn't find a thousand. You know, it only finds two or three. And so you're going to be 997 who escape. And those three, what should they pay? What's – should they pay nothing? Should they pay the whole thing? Should we do it somewhere in between? How? That's the same. I'm just restating the problem. And you have experience in this field, so what do you really think? Well, in some of the cases, there is evidence that – of the victim having knowledge of an individual, and in that case, those cases, there have been awards of restitution, some of them 3,000, 5,000, 15,000, 30,000. But there's some knowledge and there's some evidence for a judge to base a finding of causation to the award of restitution. And it's a fact-based determination. There has to be some evidence for which the judge makes his determination. Alito, your answer is in a large category of cases, and this may be – these may be the typical cases where there's a digital image and it's out there, and you don't even know that there are a thousand people who have seen it. It's impossible to tell how many people have seen it and certainly impossible to see how many people will see it in the future. It exists and apparently is impossible to eradicate it. Your answer is that in those cases, the victim gets nothing. I mean, that's your honest answer, and that may be where the statute points, but I think that's your answer to Justice Breyer's question. The victim gets nothing in those cases because it's impossible to determine what percentage of the harm is attributable to this one defendant's possession of the child pornography. I don't – and that's not what I'm saying. In the Second Circuit in Lundquist was an Amey case where there was a finding of losses and restitution, and the court, the Second Circuit, specifically addressed how to calculate it. It doesn't have to be precise. We're not saying it has to be a precise determination, but there has to be some evidence for which a judge can base a determination that ties the losses in this case to the conduct. So what is your – Sotomayor, give me an example of what you're talking about. In Lundquist? Now here you're saying because she didn't know the name of your defendant, you win. Because you can't say any harm was caused by him because she didn't know his name, correct? Is that your position? No, Your Honor. My position is that the district judge made a determination as the gatekeeper of the forensic science that the government didn't approve its case. If you – So give me an example of how the government, in the hypothetical that Justice Alito spoke about and Justice Kagan, you've got – or Justice Breyer. Lundquist is a perfect example, where there are two reports by their expert explaining how the knowledge of an individual, of Lundquist, affected her treatment, affected her day-to-day life, and their specific report talks about knowledge of the – this individual. The particular individual. She has to know each individual who has been viewing her rape on these pornographic items that have been distributed widely. She has to know each individual, or she can't recover. By the woman has undergone serious trauma. She has undergone serious psychiatric harm because of her knowledge that there are thousands of people out there viewing her rape. But you say she can't. Why isn't your client at least responsible for some of that? Even without her knowing him, he had two of her pictures. He's one of the thousands of people who viewed her rape. So why can't she recover some amount from him? I mean, the other side says she ought to be able to recover everything from him. You say she ought to be able to recover nothing. What about something in between? What about figuring out how much of her total psychiatric damage and all the expenses and whatnot are attributable to this particular person? Justice Scalia, the answer to your question is multifaceted. And you said that for another question. Give me one facet, huh? Congress dictated that all victims who are identified receive notice. And that notice goes to her lawyer. And in the later cases, in the recent cases, she's been notified of every single one of those notices that are received. And appropriate counseling has been given in all the later cases. Let me ask you, you're mentioning this case. There was another case that also involved and came up at the same time, the Wright case. And there was a settlement there, and it was for what was the amount of money? The amount of damages in the Wright case? I think in Wright it was $500,000. It was the court's order, I believe. Now, was there something in the evidence there that made it proper to award restitution in the Wright case, but not in this case? No. They're the same, yes. Yes. And I'd like to reserve the remainder of my time. Thank you, counsel. Mr. Dreeben. Mr. Chief Justice, and may it please the Court. As Justice Breyer indicated, there really are three stark choices before the Court in this case. Caroline's position is that because of approximate causation requirement, Amy can obtain nothing in restitution. Amy's position is that because multiple people have contributed to her single loss, she can obtain full restitution for all of her losses from every criminal defendant. The government's position is that there is a solution that tort law has developed for providing some restitution for Amy, not the entire restitution that would be owed on account of her entire loss. Scalia, I mean, I frankly don't agree with what you say modern tort law is supposed to allow, and Keaton, you know, doesn't really establish that that's what the courts now do. But even without agreeing with that, can't I find that that is the system that this I mean, we're dealing here with a question of statutory interpretation. So the question is not what does modern tort law allow, but the question is what reasonably could Congress have meant by this statute. Dreeben I agree with that, Justice Scalia. Scalia Because I'm not going to go along with you on, you know, modern tort law. I think that's nonsense. I don't think it's true. Dreeben Okay. The tort law issue is not really all that modern. It dates back to the restatement second of torts in section 443a, and this Court applied that section in the Burlington Northern case, which was a CERCLA case, to hold that apportionment of the damages was required in a pollution case where all the pollution had merged into a single. Sotomayor But how do you square your position with the statutory language?  Sotomayor Well, I mean, I think that the statute provides a full amount of the victim's losses. It also forbids courts to decline to issue an order, a double negative, but it can't the court can't refuse to issue an order on the ground that the victim has been compensated by any other source. It seems to me that that language, as crazy as it seems to you or to you, compels joint and several liability, because it's saying any, all losses, full amount of losses, and you can't offset her compensation from any other sources. Dreeben Justice Sotomayor, I think that the key to reading the statutory language is that the definition of victim refers to a victim of the offense in this case. So the term victim means the individual harmed as a result of a commission of a crime under this chapter. The government's burden of proof in section 3664e refers to demonstrating the amount of the loss sustained by a victim as a result of the offense. So it refers to the defendant's offense, not to the collective harm that the other person has caused. Sotomayor So why isn't that a but-for cause? I mean, if you're going to argue that, you have to be arguing but-for. Dreeben Justice Sotomayor, I don't think so. Sotomayor That her damages have to be the but-for cause. I hope that the Court will read the as-of-the-result-of language to require causation, but to interpret it in light of the way causation has been understood in the unique circumstances that you have here. Scalia You don't deny but-for. I haven't understood your submission to be that there need not be but-for cause here. Dreeben Justice Sotomayor, there's collective aggregate but-for cause. And the way that tort law dealt with this is not to accept Paroline's position that even if it you took me out of the equation, Amy's harm would be very severe. Unquestionably true. What tort law said is that if a multiplicity of actors inflict a single harm and one of them comes forward with a reason that, if accepted, would exonerate all of them, then that cannot be a proper test of causation. The proper test is aggregate causation, where the aggregate group of offenders is the but-for cause, and each one of the individuals in that set can be regarded as. Roberts Doesn't the individual at least cause some harm without regard to the harm caused by the others? Dreeben Justice Sotomayor, yes. Roberts Of course, yes. Now, why isn't it the case, why can't the why can't Amy have an expert that comes in and testifies as a result of their experience that the psychological harm caused by knowing that those images are available to others and have been viewed by someone else will require, on average, whatever, a certain amount of counseling for a certain amount of time, so that the one individual is responsible for that harm, regardless of what else happens? Now, he may say, well, it's kind of unfair to stick me with that, but that's a different question than the aggregate causation issue that you're addressing. If you have expert testimony, and there will be expert testimony on the other side that says it normally requires counseling for someone when they find out, without regard to anything else, that an individual has viewed this, why doesn't that require or at least allow assessment of the whole amount? Mr. Chief Justice, that would allow assessment of some of the damages. I don't think that it would allow assessment of the entire amount, because again, we regard this statute as enacted against the backdrop of tort law principles that recognized you can have aggregate causation, but it's not appropriate to hold each person in the set responsible for all the damages. Roberts I'm sorry. My hypothetical is not aggregate causation. It is that this individual caused this harm. If there is a specific amount of harm caused, and if Amy could find an expert who would testify to that respect, and it would require, say, six counseling sessions, and it would set her back in employment for a year, then I guess a court could, if it found that credible, conclude that a certain amount of loss is attributable directly to her. Scalia Well, you're confusing whether there's a specific amount of harm caused with whether it is easy to measure that harm. The tort cases you refer to are cases in which there is a result produced that is not severable. You can't say this person is, you know, accounts for this much of it, such as pollution. There's all the pollution there. The stream is polluted. That's quite different from this case where this young woman has been subjected to psychological harm because of thousands of people viewing her rape. Now, this she would be subjected to less psychological harm if it was just one person or ten people or a hundred people. In other words, each person increases the amount of her psychological harm. It is severable the way the tort cases you refer to are not. And so why shouldn't the question in this case be simply he caused a certain incremental amount of psychological harm to this woman, and he should pay for it? And it's up to the district court to decide what the proper amount of that payment ought to be. Justice Alito, I think that is consistent with the conclusion that the government reaches, although we take a different route to it than Your Honor's position. Well, is it consistent with human psychology? Are psychologists really able to do this if it's known that this image has been viewed by — even if you could figure out how many people have viewed it, and I think in the age of the Internet that's impossible. But if you knew that it had been viewed by a thousand people, is a psychologist able to say that her knowledge that it has been viewed by a thousand people causes this much harm? When she learns that it's now been viewed by a thousand and one people, there's a little bit of additional harm or some increment of additional harm, and we can figure out how much that is. Psychologists can do that. Justice Alito, that is why the government has proposed a different approach to getting to the same conclusion. And, Mr. Dreeben, I would really like you to tell us concretely what the government's position should be. That is, we have all is one position, nothing is another position in the middle. The government comes down in the middle, and what I gather from your brief, you say there should be a reasonable formula to arrive at a starting point for further analysis. So I don't know what you propose as the starting point. What is the reasonable formula that the Court should use for its starting point? Dreeben, the courts have approved several different formulas as not being an abuse of discretion. One camp of courts approves a view in which the government submits the number of people who have been ordered to pay restitution to Amy, and that number is then divided into the total harm, measured by monetary means, that Amy has established. And that provides a starting point. So, for example, in this case, that starting point would be around $18,000. And then courts can adjust that. How do you get to the $18,000? By considering the number of defendants who have been ordered to pay restitution to Amy, because that provides some certainty in the face of, as Justice Alito pointed out, the great difficulty in determining how many people have actually viewed these pictures. The number of people who have been ordered to pay restitution represents a judicial finding that, in fact, her picture is involved in that person's offense. Ginsburg, go ahead. It wouldn't include the people who are not prosecuted, and it wouldn't include the people who, in the future, are prosecuted. That is correct. In fact, in some courts, Justice Ginsburg, have therefore required that the formula be adjusted to make some sort of reasonable estimate of the total pool of violators. And I ask you one question. Roberts How does that work for the first person? Dreeben It doesn't work very well for the first person, Mr. Chief Justice. And for that reason, I think there are other approaches that do work better. Breyer Can we, with these, say, look, it's very complicated. I can think of some answers, but they're too complicated for me to tell you what they are. And Justice Scalia has a possible answer. Justice Alito, it seems to me, is pointing out that the second person to look at the thing, if there are only two, probably adds a lot of damage. But the one thousandth person, compared to 999, is near zero. Now, do we count this defendant as number two, or do we count him as number 1,000? Very hard to answer no answer, really. But can we say, we can't answer how you do this in practice, leave it to the Sentencing Commission, that's their job. Now, can we say that? Dreeben The Court can certainly say that the statute requires reasonable apportionment. Breyer Yes. Dreeben And the district courts have jurisdiction to experiment with different formulations. Breyer Can we say, can we suggest that the Sentencing Commission, you can't order them to do it, of course not, but can we suggest that this is the kind of problem, very difficult, technically several ways to do it, that they can go into this? Is that true, that they could go into it and recommend or perhaps order? Dreeben They could recommend an approach. What the Sentencing Commission actually did was recommend to Congress that it fix it, because the disagreements now pertain to the understanding of the statute. Our submission is that there are a variety of ways to approach this problem. None is perfect. Kagan Well, could you say more about that? You said that the Chief Justice's question was right, that it doesn't work for the first person, and you said there are better ones. What are the better ones? Dreeben The alternative that I would propose in that instance is to look at other similarly situated child pornography victims and take a look at what district courts have been awarding to those victims in similar types of cases and provide some sort of an average range. Kagan I mean, it struck me when I read your brief that it said, I don't know why these courts started where they started, whether each violation is worth a thousand or 5,000 or 50,000, and it seems as though somebody just plucks an initial number out of the air and then everything is pegged to that initial number, but that the initial number has nothing in particular behind it. Or am I — is it more sensible than that? Dreeben I hope that it's not quite as arbitrary as plucking it out of the air, but the reality is that they're certainly not using your theory, even though it's not plucked out of the air. They're certainly not using your theory. Sotomayor On the first one, it's impossible to. Scalia So they're using some theory. Dreeben They are using some theory. Scalia And you have no idea what that is and can't suggest one, right? Dreeben I think that sometimes they articulate various considerations and other times they rely on basically a consensus, a judicial consensus that in a world in which perfect information and mathematical computations are not going to happen, a reasonable approximation that accords with the judgments of 200 other Federal judges is a sensible way to do this. And I think that makes no sense. Sotomayor I'm not sure what's sensible. Roberts How do you tell your model, how does it work if it turns out that the damages are a million dollars as opposed to $3.4 million? Is it still $1,200 per offender? Dreeben We would, as I indicated, start with a division problem and approximate the number of damages that are allocable to that individual and then adjust it, because these defendants are not all identical. Roberts You would expect the defendant in a case where the restitution sought is a million dollars to pay 50 percent of what he would pay if the damages were $2 million. Dreeben Not necessarily, because as I indicated, Mr. Chief Justice, the defendants aren't all identical. Mr. Paroline possessed two images. Some defendants may possess 100 images. Some defendants may be distributors as well as possessors. And courts have taken those factors into account. Ginsburg What about taking into account that the perpetrator, the uncle, that the restitution was something like $6,000, right? Dreeben Yes, that's correct, Justice Ginsburg. Ginsburg So if there's any kind of proportionality, it seems that the possessor of two images should not be responsible for more than the person who perpetrated this horrendous crime. Dreeben Well, his restitution may have been predicated on a very early period where it was not clear that Amy would be as victimized as she has turned out to be. The very vice of child pornography, possession and distribution, is that it continually reinflicts the abuse on the victim so that she cannot make a fresh start and say, it's finally over, I've put this behind me, I can now move on with my life. The continuing re-victimization of her is what justifies and creates the increased harms. Ginsburg I would like you to, to the extent that you can, to help district judges get a handle on this, what formula should they use and what adjusting factors should they take into account after they have that starting formula? Dreeben Justice Ginsburg, the formula that I proposed is the one that the government has been suggesting to district courts around the country. Look at the number of convicted defendants who have been ordered to pay restitution to Amy. Divide that into the total harm that the district court finds was the result of the severity of the offense. Courts of appeals have said that other formulations are also not abuses of the district court's discretion. And I would emphasize that. Scalia That's wonderful. And, you know, I want to go along with you. This is a bad guy and he ought to be punished and he ought to give restitution. But there is such a thing as due process of law. And what you're saying is, I have no idea how much he's going to be required to turn over. Whether it's going to be, what was it in this case, $3 million? Dreeben That's the amount of money that Amy has asked for. Scalia I have no idea what he's going to be socked with. And that's not what we usually do with criminal statutes. We just can't say, leave it up to the district judge, you know. And they all come out different ways, but who cares? It's, you know, so long as it's within some reasonable amount. That's not the way we do law. Dreeben Well, Post Booker, that is what happens in criminal sentencing. District judges have an enormous amount of discretion about how much imprisonment time and fine time to use to apply to a defendant. And there is a pellet review that helps establish some norms. They can look to sentencing guidelines as starting points. But in criminal sentencing, imprecision and estimation is the order of the day. And when you're dealing with a case of a criminal statute, it's the order of the day. Scalia That's because the statute says so. It says you get from, you know, 10 to 20 years, okay? But the statute here doesn't say, you know, you'll get between this and this, whatever the district judge likes. It doesn't say that. Dreeben It does. Scalia It says you should compensate the victim for what you've cost her. Dreeben But there are two background principles that I think reinforce that a reasonable estimation is better than all or none. The first background principle is that in criminal restitution, exactitude is not required. Reasonable estimates are the order of the day. Courts have recognized that. And it's reinforced here by the fact that this restitution provision is kind of a crime-tort hybrid. It's criminal sentencing, but it's enacted against the background of compensatory tort law. And in compensatory tort law, reasonable estimates have long been accepted. In the Burlington Northern case that I referred to earlier, the district court made an effort to do some calculations, and then at the end he applied a 50 percent fudge factor for estimations that reflected possible calculation errors. Scalia We have a fudge factor here. Can a district judge use what he calls a fudge factor? This is a criminal statute. It's not a tort case. Dreeben It is a criminal provision. Scalia It wouldn't be liable for a fudge factor. Dreeben That is placed into criminal sentencing with a goal of both compensating victims and determining that each defendant comes face to face with the fact that that person has inflicted some harm on a particular victim. That's a valuable criminal sentencing purpose, and to the extent that the only thing the courts can do in this situation is attempt reasonable approximations that will not be exact, it's a better solution than saying nothing, as Paroline would do, or saying everything, as Amy would do. That is not proportionate to what the defendant has done, but zero is also grossly  Thank you. Roberts Thank you, counsel. Mr. Cassell. Cassell Mr. Chief Justice, and may it please the Court, remarkably this morning the other parties have taken a statute that promises Amy she will receive restitution for all of her losses and interpreted it to be a statute that has fudge factors, imprecision, estimation to produce some kind of an award that in the government's view is fair. That's not what Congress provided in this particular statute. Congress answered the question presented. You were asking, Justice Breyer, what's the amount? The text of the statute tells us it is the full amount. Here Amy has put forward. Breyer I mean, the person didn't cause the full amount. I mean, do you think Congress didn't intend? Do they want to have people pay for injury they didn't cause? Cassell We disagree with your premise there with all respect to the program. Breyer Because the full amount, fine. But I mean, immediately you'll say at least they have four other people that they prosecuted for this, and those people caused it just as much, and so let's divide it by five. Cassell The solution to the point that you're raising, Justice Breyer, is to recognize the Petitioner was a contributing cause to all of Amy's losses. Amy's losses come from a vast, faceless, anonymous crowd of thousands of people scattered around the globe from Denver to Denmark who are looking at pictures of her being raped as an 8-year-old girl. And that aggregate group of people all contribute to a loss. And I'm sure that Your Honor is familiar with the cases from this Court, for example, the Norfolk and Western case, where asbestos manufacturers all contributed to a particular loss. The result in that case was joint and several liability. Each person who contributed to the loss was on the hook for the damages in their entire life. Kennedy So Congress assumed that this defendant could be liable in part for other people's crimes. Cassell No, Justice Kennedy. What Congress assumed is that he would contribute to a single loss, and then at that point he would be responsible as a contributing cause. Kennedy A single law or loss? Cassell I'm sorry, loss. He contributed to the loss. And it's important to understand that. Scalia He had two pictures. He did not distribute at all. He was not a distributor, right? He was just a contributor. He was convicted of possessing two pictures. And the statute doesn't even require intentional possession, just knowing possession, right? He could have gotten them by accident. He knew he got them, but he never took them off of his computer. But he's still guilty of the crime. So I mean, he's guilty. He's guilty of the crime. But to sock him for all of her, all of her psychiatric costs and everything else because he had two pictures of her, Congress couldn't have intended that. Cassell Congress did intend that, Your Honor. They said that he was responsible for the full amount of the losses. There is a two-step process here. First, did this particular defendant cause harm to this particular victim? That's the victim definition found in 2259C. And there are findings of fact by the district court in this case that the defendant Petitioner did harm Amy. And then at that point, the only question left under this mandatory restitution statute is how much restitution does she get? And Congress has answered that question. She gets the full amount for five itemized categories of losses, psychological counseling being the most prominent. She's documented with detailed submissions that she is going to bear liability. Roberts, responsible for those as a proximate result of the offense. The only offense shown here in this case is the possession of the two pictures. So how can all of those amounts be the result of the possession of two pictures? The language you have quoted, Mr. Chief Justice, is from subsection F. Amy is not seeking any recovery under subsection F. Well, you understand the statutory principle that it says any other losses suffered by the victim as a proximate result of the offense, which suggests that the prior losses are also limited as a proximate result of the offense. No, Mr. Chief Justice. And we would ask you to affirm the Fifth Circuit's en banc decision, which disagreed with that reading. There are numerous canons of statutory correction. Why would it make sense to say that he's liable for lost income, whether or not it's a proximate result, but when it comes to other losses suffered by the victim, they have to be the proximate result? There are a number of answers to that question, Mr. Chief Justice. Any other loss is potentially open-ended. It includes such things as emotional distress damages that could be potentially uncapped. A through E, however, are all out-of-pocket pecuniary costs. They are defined. And in this case we have defined with precision what the course of lifetime psychological counseling costs will be for Amy. Aren't those? Sotomayor, I think you're wasting time on the argument. If we pull, if we don't buy your argument, if we read into F, proximate causation. No, Justice Sotomayor. So why are you wasting time on the argument, if you win either way? Tell us why. I think we win either way, and obviously I have to anticipate that there may be a variety of views on this very difficult question. But let's assume that the Court wants to read proximate cause into other parts of the case. Proximate cause is a legal shorthand for scope of the risk, a legal duty. And Congress has defined the legal duty here. For those criminals who commit a serious 10-year Federal felony, the scope of their risk is they will pay the full amount of the psychological counseling costs. Can I get back to your point was that all of the A through E is limited and you don't need to? Well, it's not. One of the losses that can be gained, recovered, is lost income. Now, if you take away proximate cause, the argument can be, well, I had to undergo counseling at a particular period, so I wasn't able to get a master's degree in this. Because I didn't get a master's degree, I wasn't able to get a better paying job, and therefore I'm entitled to the income from the better paying job that I would have gotten if I had a master's degree, if I didn't have to take the counseling. Now, unless you limit that by proximate cause, it's entirely open-ended. It's not confined, as you said. Well, you're talking about the problem of but-for causation. Then what kind of additional limitation will be placed on this? No, no. I'm talking about proximate. Right. So there would be an additional cause, which the government argues should be a proximate cause limitation. But there are other limitations that could be attached, and that's what the Fifth Circuit en banc did. It said, for example, that if Amy suffered a car accident on the way to therapy, that that would not be included. Why? Because contextually and conventionally, we would not refer to those types of losses as stemming from child pornography. Because that's not the cause. Scalia, like Justice Sotomayor and like the government here, I think even if there is a proximate cause requirement, it has been met, once you adopt the aggregate offense notion. But I wanted to ask you about subsection F. It doesn't seem to me that you, whether or not you read the proximate cause element in F into A, B, C, D, and E, it seems to me what you have to read into A, B, C, D, and E is the portion of F which says any other losses suffered by the victim as a result of the offense, of the offense. Is it only F that is limited to the particular offense? And A, B, C, D, and E means those items that come from anybody else's conviction? No, the linkage there, the particular defendant's conviction, comes from subsection C. A victim such as Amy has to establish that she's been harmed as a result of this defendant's crime. That establishes there's been a reference to aggregate cause. We think the way to look at this would be to look at the aggregate cause. Kennedy is that another way of saying as a result of this defendant's offense? As a result of this defendant's offense, we agree that subsection C requires Amy to show that she was victimized by this defendant. And there are other ways of saying that she was victimized by this defendant. Kagan, but you are not claiming, are you, or are you, that she's been victimized to the tune of 3.4 million as a result of this particular defendant's offense? We are saying that she, that the Petitioner in this case, the defendant, contributed to all of the losses that she suffered. Well, contributed to. Yes. But I take it that the point of the government submission is only contributed to, and now we have to sort of approximate what the contribution was. And you come in and you say, no, it should be, notwithstanding that this particular offense was responsible for only a part, you think the defendant should be liable for the whole. We think that the defendant contributed to all her losses. Let me give you a quick illustration. Next week, when Amy goes to her therapist and is billed $100, the defendant contributed to all $100. And, of course, all we have when we get to the additional numbers down the road is simply the fact that she is going to be going to therapy not just next week. I guess I'm just not sure what that means. Contributed to $100. Does that mean she's responsible, the defendant is responsible for the entire $100 as a matter of fact? Or does it mean that the defendant is responsible as a matter of fact for some lesser part of the entire harm? No, the first. He's responsible. He is a contributing cause to the entire amount. I guess when I say responsible, I don't mean as a legal conclusion. I mean, did the defendant cause the entire $100 of harm? He contributed to the entire $100, just as multiple polluters contribute to asbestos disposals. So he should contribute to the payment. You're saying he contributed to the harm, but he makes 100 percent of the payment. That doesn't seem to me to make much sense. Well, Justice Scalia, we're pure textualists on this. When you look at the text of the statute, Congress has answered that question. Congress could have written the statute different ways, but they said that she is entitled to recover the full amount of her losses. He doesn't say from that person. Well, the full amount from the particular offense, Mr. Castle. So it's the full amount of whatever the particular offense caused. But you're not saying that this defendant caused the entire 3.4. We're saying he contributed to the entire 3.4. I want to give you this. I'm sorry. I didn't mean to interrupt your statement. You can't disaggregate them. And that's the fundamental problem here. If you look at, for example, our amicus brief with the American Professional Association involved with the sexual abuse of children, what they say is that you  They all come together to produce something like this. And so did Soda contributed also a person who didn't have a picture of her, but watched other victims. That person contributed to her, too, because it creates a market for the entire situation. So some limiting principle has to come into play. And the limiting principle that I think people are driving at is because there is a terrible crime, we don't convict the person who didn't do it. All right? And similarly, because this is a terrible crime, you don't require a person to pay what he didn't cause. Now, that's sort of a principle going on. Now, if you accept that at least hypothetically, can you give any answer? I'm afraid you can't, and you're going to say no. The answer to what seems to be bothering me and a lot of others is, okay, let's accept the notion of cause. But what is a reason? This is called restitution. It isn't called fines. And so given that, how do you do it? How do you distinguish so she gets some reasonable amount? How do you do it that you're all right? I can think of we've had about four different suggestions here. But what's your opinion? If you lose on the first, what's the best way to do it? That's what I think people are struggling for. The best way to do it is to give Amy the full amount of her loss. That's what I suspect you would say. Let me give you that. Mr. Cassell, let me give you this example. There are pictures like this, and it's known that they're out on the Internet. And so therefore, they're probably always going to be available, and who knows how many people are going to view it. And so the first person is caught for possession of some of these pictures and is convicted. And the psychologist testifies that, you know, my client, that the victim in this case knows that these things are out there and there's an unknown quantity of people who are going to view it, and my estimate is that the treatment that she is going to need for this is going to be $5 million, all right, or $3 million, whatever it is. Now, the first person is convicted, so the first person is assessed restitution in the amount of $3 million, right? But then shortly after that, 10 more people are convicted for possessing the same amount. They all pay nothing because the first person paid everything? That's your answer? That's our answer, and that's exactly what Congress wanted. Congress wanted to take these vulnerable victims of child pornography crimes, federal sex offense crimes, and domestic violence, and get them full restitution as quickly and effectively as possible. And then after that, if there's a need to send an additional message to a defendant, he can be fined up to a quarter of a million dollars or sent to prison for a longer period of time. Ginsburg. What about at least the amount of the judgment she has already received? The total amount, I think, was $3.4 million that you're seeking? Yes. And she has so far collected how much? As of yesterday, $1,752,000. Would you at least deduct that from the fee? Certainly. Absolutely. No, we're not asking for double recovery. Amy simply wants to be made whole. She wants to recover her psychological counseling costs and her lost income. Usually when we approve joint and several liability, we do so against a background of a functioning system of contribution, where one defendant pays the entire thing but then can go after other defendants and be pretty well assured that he gets their share. Now, here there's nothing like that. And the question, and I guess the question is, you're asking us to impose that kind of system without the usual thing that goes along with it, which is a sharing mechanism. We disagree with the premise here. The background principle for intentional tort theses is they got stuck with the entire liability jointly and severally. That was the common law approach. Now, if you want to deviate from the common law approach and read a contribution action into the statute, we're certainly not opposed to this. But the overriding goal of Congress, as it always is when they deal with criminals, intentional tort thesers, is to pay more attention to the victims and less about some notion of distributing losses among criminally culpable defendants. Congress doesn't give you any indication in the statute that they were concerned that one particular defendant might pay more than his, quote, fair share or whatever that may be. And the fundamental problem with the government's position is that after four and a half years, there is no indication as to how much Amy is going to receive in this particular case. What the government proposes to do is to cast district courts adrift, as they have been for the last four and a half years, to look at a variety of factors, including remarkably, if we read the government's brief correctly, one of the factors is the need to get the victim full recovery. Alito In my example, suppose that the first person who has a restitution order for the full amount, it seems unlikely ever to be able to pay that. Does that mean that they you would impose the same, keep imposing the same judgment on everybody else? So everybody would be hit with $3 million. Breyer Precisely, until the victim recovers the full amount. Breyer Well, what about doing what you'd say is make the department, you can find out figures, you could find out from figures what's the likelihood that X number of people will be caught? And say it's 3 out of 1,000. Then what you do is you divide by 3. I mean, that way everybody would be treated fairly and, moreover, the victim would at least have a shot at getting. Alito But the problem is in this particular case, the numbers show that at least 70,000 people have viewed Amy's images. Breyer And how many are going to get caught? Alito We have no way of knowing. Breyer Well, you can find out. There's no, it's not an impossible question for people to come in and use the numbers and figure it out. My guess would be a very tiny percentage. Alito A tiny percentage, and you would be assuming. Breyer Right, fine. And she's going to get a lot of her, then she's going to get from each one a pretty good share, only if. Alito What you're assuming, though, is that there's going to be a steady stream of cases, that criminals aren't going to discover new encryption techniques to keep their nefarious activities secret. We don't know whether there are going to be convictions next year or the year following. And Congress acted against that understanding and said she recovers the full amount from the very first person, and if she gets her compensation, then she's out of the picture. And one of the beauties of our approach is that we estimate within two to three years, if you affirm the Fifth Circuit, that her restitution requests will be done. If you adopt the government's approach, you could be looking at literally thousands and thousands of cases where Amy will be have to, will have to be filing piecemeal restitution requests, collecting as little as $47 under some of the calculation theories that the government has proposed, and there's no certainty that she's ever going to get the psychological counseling costs that she desperately needs and the lost income. Now certainly Congress could have drafted a statute in different ways, but every single word or every single phrase of the statute, at least, indicates to you that Congress had one goal and one goal alone in mind, that is that victims get the full amount of restitution that they desperately need. And we're not talking here about reworking an entire restitution scheme for the broad swath of Federal crimes. We're talking about three crimes covered by the Violence Against Women Act, the child pornography cases, Federal sexual assault cases, and domestic violence cases. And it's hardly a surprise to discover when you look at the Violence Against Women Act that Congress created a particularly expansive restitution regime for the victims of these particular crimes. And we would direct your attention, for example, to the bipartisan amicus brief of a group of Senators who were involved in the drafting of the Violence Against Women Act. And they indicated that their overriding goal here was to make sure that these vulnerable victims were protected. Scalia, is that what this is? Some of the members of the Court review our interest. Even those that like legislative history don't like subsequent legislative history. Well, then if you want to go with the textual approach, this is a simple case, Your Honor. Roberts, no, it's not a simple case. You said, rhetorical exaggeration, every word in the statute leads to that. Well, the key words don't. The key words are proximate result of the offense. And it's difficult to argue that the entire amount is a proximate result of the offense of two pictures. Well, what happened was the Petitioner in this case contributed to the entire amount. And then the way the statute operates is a very conventional way. He becomes jointly and severally liable for the full amount. That's not some kind of innovation. This Court, for example, in the Norfolk and Western case, unanimously said that joint and several liability is the traditional approach. And so what Congress has done here is not create some newfangled regime. It has simply taken a joint and several liability regime that this Court has routinely applied against negligent tortfeasors and said when it comes to criminals who act with scienter, acting knowingly or intentionally, and cause harm, that they're going to have to make sure that the victims are fully compensated. Ginsburg-McCarthy But the point has already been made that it isn't the typical joint tortfeasor situation where you can seek contribution from people who equally contributed. How would the defendant here go about seeking contribution? Well, the defendant would, if there was a wealthy defendant who was unhappy with the other wealthy defendants out there and interplead them in some kind of a case. We admit that's going to lead to litigation burdens, but Congress wanted those burdens on guilty criminals rather than innocent victims. Roberts. Thank you, counsel. Mr. Schneider, 5 minutes. Thank you. This is a criminal sentencing problem. And Congress in 1996 apparently codified this Court's opinion in Ewing. In creating a burden of proof on the government to demonstrate that the losses sustained by the victim are the result of the offense, and created a number of new mandatory restitution statutes that apply. And that doesn't change. So as the reading, the plain reading of the statute, 259, with the government's burden of proof, requires that the government demonstrate that, for example, the medical services losses of the victim of child pornography are caused by the result of the defendant's offense. And that's what Congress intended by the adopting of 3664E and placing it as the enforcement provision of each of the restitution statutes that it created in 1996. It codified Ewing. And what the idea of contribution suggests that convicted sex offenders across the country are going to get together and see who pays what to whom. That's not what Congress intended. This is a sentencing proceeding that requires a particularized, individualized sentence based upon criminal conduct. And that's what the – what Congress intended when it created all these statutes. The ideal solution is to say, Congress, make each defendant pay $1,000 per image. That would be into a fund for restitution for victims. And that would be a fund for victims. Kennedy, right back to the question Justice Kagan began, that if you have two offenders, that there's going to be recovery. If you have 1,002, there won't be. There will always be – if there's two offenders that are caught, you may get restitution from one of them. But you're looking at what a single judge has to sentence someone to. A single judge, like Judge Davis, had one defendant. He didn't have a defendant in Florida or Maine or Oregon to see what that person's background was. It doesn't have the benefit of a PSR. He has to look at one person. And in this case, the district court balanced two experts and the methodology that was challenged, and simply said, I find she was a victim, I find that she was harmed, but the government didn't meet its statutory burden of proof in this case. And in many other cases, there is loss as proof, and there's a difference between harm and loss. In this case, the district court did exactly what the government wanted them to do. Weigh the evidence, listen to the evidence, look at the defendant, and see if the government met its burden. And we'd ask the Court to reverse the Fifth Circuit and affirm the district court. Thank you very much. Roberts. Thank you, counsel. The case is submitted.